IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN T.-W.,[1] ) <br> ) <br>       **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ANDREW SAUL, Commissioner of  ) <br> Social Security,[2] ) <br> ) <br>       **Defendant.** ) <br> ) | No. 18 C 1720 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Susan T.-W.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request for reversal of the Commissioner's decision is granted, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On February 25, 2014, Plaintiff filed a claim for DIB, alleging disability since March 21, 2013[3] due to back and shoulder pain. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 25, 2016. Plaintiff personally appeared and testified at the hearing and was represented by counsel. Vocational expert James E. Lanier also testified.

On September 29, 2016, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of March 21, 2013 to her date last insured of December 31, 2013. At step two, the ALJ concluded that Plaintiff had the following severe impairments: cervical disc disease, lumbar disc

---

[3] At the administrative hearing, Plaintiff's counsel amended her original onset date of February 22, 2009.

disease, and bilateral shoulder degenerative joint disease. The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal a Listing. Before step four, the ALJ determined that Plaintiff retained the RFC to perform light work with the following additional limitations: no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs; frequent balancing, kneeling, and crouching but only occasional stooping and crawling; and no more than frequent overhead reaching with the bilateral upper extremities.

At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a department manager, which was performed at a medium level. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I.  ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does

the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence,

4

resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

5

**III. ANALYSIS**

Plaintiff argues that the ALJ's decision was in error because (1) he failed to properly weigh the treating physician's opinion; (2) he gave too much weight to the opinions of the non-examining agency physicians; and (3) he did not correctly assess Plaintiff's symptoms.

Plaintiff first argues that the ALJ failed to follow the "treating physician rule" by not appropriately weighing the opinion of her treating physicians, orthopedic surgeon Dr. Samuel Chmell and pain specialist Dr. Scott Glaser. The ALJ's decision not to credit their opinions was critical, because if Plaintiff's treating physician opinions were given greater weight, she likely would be found to be disabled.

An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record.[4] 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739; *see also Israel v. Colvin*,

---

[4] The Social Security Administration modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)..., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *Compare* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."), *with* 20 C.F.R. § 404.1520c ("For claims filed (see § 404.614) on or after March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2014, and thus the ALJ was required to apply the former treating physician rule.

6

840 F.3d 432, 437 (7th Cir. 2016) ("A contradictory opinion of a non-examining physician does not, by itself, suffice as a justification for discounting the opinion of the treating physician.").

Even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require an ALJ to consider a variety of factors in determining the weight due to an examining physician's report, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Scott*, 647 F.3d at 740.

Dr. Chmell continuously saw Plaintiff on an almost monthly basis since 2004, the year Plaintiff suffered neck, back, and upper extremity injuries when a heavy box fell on her head at work. In an RFC questionnaire, Dr. Chmell opined that pain to her neck, back, and shoulders would be expected to interfere with Plaintiff's attention and concentration constantly; she could walk one block without rest or severe pain; she could sit or stand for at most ten minutes at a time before needing to change positions; she could sit or stand/walk for less than two hours total each in an eight-hour workday; she would need to walk for six minutes every twenty minutes in an eight-hour workday; she would need to take unscheduled breaks throughout a workday; she could rarely lift or carry less than ten pounds and never lift or carry more than that; she would never be able to use her arms for reaching,

7

including overhead; and rarely use her hands or fingers; and he concluded that she experienced no "good days." (R. 515-17.)

Clinical findings from Dr. Chmell's treatment notes from around the relevant time period include lumbar and cervical range of motion limitation; reduced shoulder motion and crepitus; lumbar and cervical spasm and tenderness; positive Spurling's signs, which is a nerve root pain test; and positive straight leg raising tests, which is an indicator of sciatica and disc herniation. He recommended exercise, medication, and treatment with pain specialist Dr. Glaser. Dr. Chmell noted that Plaintiff was unable to continue vocational rehabilitation due to pain.

Two months before Plaintiff's alleged onset date, Dr. Glaser noted that Plaintiff had completed forty-six physical therapy sessions for her lower back pain without success. Throughout his treatment of Plaintiff, Dr. Glaser performed a number of procedures aimed at reducing her pain, including radiofrequency ablation, injections, and nerve blocks; he also prescribed Vicodin. In a chronic pain RFC questionnaire completed in July 2014, Dr. Glaser stated that positive objective signs of Plaintiff's pain included a reduced range of motion, reduced grip strength, sensory changes, impaired sleep, tenderness, swelling, muscle spasm, and muscle weakness. He did not consider Plaintiff to be a malingerer, nor did he believe that emotional factors contributed to her symptoms. According to the RFC, Plaintiff's pain would frequently interfere with the attention and concentration necessary to perform even simple work tasks; her impairments were reasonably consistent with her symptoms and functional limitations; and she would not be capable of even low

8

stress jobs. As to Plaintiff's specific functional restrictions, Dr. Glaser opined that Plaintiff could walk three blocks without rest or severe pain; she could sit or stand at most twenty minutes at a time before needing to change positions; she could sit or stand/walk less than two hours each in an eight-hour workday; she would need to walk six minutes every twenty minutes in an eight-hour workday; she would need a job that would permit her to sit, stand, or walk at will; every twenty minutes she would need to take unscheduled breaks lasting six to ten minutes during a workday; her legs would need to be elevated with prolonged sitting; she could occasionally lift and carry ten pounds; rarely twist, stoop, crouch, climb ladders, or climb stairs; she would have no ability to reach with her arms, including overhead, and limited ability to use her hands or fingers; and although she would experience good and bad days, she could be expected to be absent from work more than four days per month as a result of her impairments.

The ALJ noted that although Dr. Chmell's examinations showed reduced range of motion and positive diagnostic signs, they did not show neurologic impairment such as weakness, diminished sensation, or impaired reflexes. Additionally, the ALJ concluded that Dr. Glaser's assessments showed no more than mild to moderate tenderness in various areas of Plaintiff's back, which was not consistent with the degree of pain described by Plaintiff.

The ALJ also stated that while no independent medical examination was submitted by Plaintiff, "Dr. Glaser's cynical diatribes" about the independent examiner "strongly suggest that the examiner did not find the claimant's allegations

9

of pain reasonable considering the objective clinical signs, which Dr. Glaser indicated included no evidence of neurologic deficit or provocative maneuver." (R. 22.) The ALJ thus concluded that although the IME report was not in the file, it "appeared to be consistent with the other examinations in the record, which did not show a neurologic component to the claimant's pain, and based on Dr. Glaser's strong reaction, was not consistent with his belief that the claimant had debilitating limitations." (R. 22.) The "diatribe" described by the ALJ was a notation in October 2013 treatment notes, in which he wrote: "The IME doctor bases his opinions primarily on her PE and the lack of 'diagnostic findings' and provocative maneuvers or neurologic deficit. This is sophistry. It is well known to ABIPP board certified pain management doctors that the PE is practically useless as to diagnosing the cause of pain. She is not MMI. She has chronic pain and deserves to have it treated minimally invasively with diagnostic and therapeutic procedures. He describes my care of the patient as imprudent because I worked with the patient to help her discern the cause of her positive tests and did not reflexively and thoughtlessly discharge her. My care was compassionate and appropriate. Part of the ABIPP board certification is in controlled substance management and the issue of illicit drug usage." (R. 324.)

The ALJ erred by relying in any way on the conclusions of the IME report, which was not even part of the record. Bizarrely, he found it to be "consistent" with other examinations in the record, even though he only intuited its conclusions based upon Dr. Glaser's reaction. Moreover, the ALJ relied on the presumed conclusions of

an unfiled report written by an unknown IME, but he made no effort to address Dr. Glaser's criticisms. The ALJ characterized Dr. Glaser's disapproval as "cynical" without even a cursory understanding of the target of his comments. Accordingly, the Court is wholly unable to determine the basis for the ALJ's decision to credit the unknown IME's report over the conclusions of Dr. Glaser. In addition, the ALJ failed to offer any medical evidence supporting his conclusion that both Dr. Chmell's and Dr. Glaser's opinions should be discounted because the clinical findings lack evidence of neurological deficits. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."). The ALJ acknowledges that "there is no way to objectively measure the degree of pain an individual experiences," (R. 21), but then effectively concludes that without objective evidence of neurological impairment, Plaintiff cannot demonstrate she suffers from the level of pain she claims.

The other reasons the ALJ gave for discounting the treating physicians' opinions are also not supported by substantial evidence. The ALJ claimed that Dr. Chmell's RFC conclusions were based solely on Plaintiff's subjective reports of pain, but his treatment notes include objective findings. The ALJ consistently asserts that Plaintiff's treatment regimen was routine and conservative, but she was treated with nerve blocks, injections, and prescribed narcotics. The ALJ also failed to explore whether less "conservative" treatment would even have been effective at

11

treating her pain, and thus her course of treatment does not establish, without more, that she did not suffer disabling levels of pain.

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found.

## CONCLUSION

For the foregoing reasons, Plaintiff's request for reversal of the Commissioner's decision is granted, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**　　　　　　　　　　**ENTERED:**

*[signature: Maria Valdez]*

**DATE:** **June 10, 2020**　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**